UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| RALPH BLACKBURN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:25-CV-82-HAI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| FRANK J. BISIGNANO, | ) | & ORDER |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

In August 2022, Plaintiff Ralph Blackburn filed a Title II application for a period of disability and disability insurance benefits. *See* D.E. 9 at 17.[1] He alleged disability beginning January 10, 2020. *Id.* The Social Security Administration denied Blackburn's application initially and upon reconsideration. *Id.* Then, on January 10, 2025, Administrative Law Judge ("ALJ") George Oetter conducted a telephonic administrative hearing. The ALJ heard testimony from Blackburn (represented by attorney Paul Baker with attorney Jessica Baker appearing at the hearing) and impartial vocational expert ("VE") Silvio Reyes Jr. *Id.* Blackburn was found to not be disabled during the relevant period. *Id.* at 30. The Appeals Council denied review on February 28, 2025. *Id.* at 1.

On April 30, 2025, Blackburn (with different counsel) brought this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's February 2025 decision denying his application for disability insurance benefits. The parties filed briefs, including a reply. D.E. 10, 16, 18. In July 2025, the parties consented to the referral of this matter to a

---

[1] References to the administrative record are to the large black page numbers at the bottom of each page.

1

magistrate judge. D.E. 11. The matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 12. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's request to remand these proceedings.

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2] The ALJ followed these procedures in this case.

At the first step, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Blackburn "has not engaged in substantial gainful activity since January 10, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.)." D.E. 9 at 19.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). In this case, the ALJ found Blackburn had the severe impairments of "degenerative disc disease; osteoarthritis and allied disorders; obesity; migraine and other headaches; diabetes mellitus; hypertension; chronic obstructive pulmonary disease (COPD); depressive disorder; and anxiety disorder (20 CFR 404.1520(c))." D.E. 9 at 20. Blackburn does not argue the ALJ should have

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

identified additional severe impairments.  Rather, this case focuses on the severe impairments of "migraine and other headaches" and depressive and anxiety disorders.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then he is disabled.  20 C.F.R. § 404.1520(d).  The ALJ found Blackburn failed to meet this standard.  D.E. 9 at 20.  The ALJ considered several listings but found none of them satisfied in Blackburn's case.  *Id*.  Relevant to this appeal, the ALJ considered neurological issues (headaches) under section 11 and mental impairments under Listings 12.04 and 12.06.  *Id*. at 20-21.  One of Blackburn's arguments is that the ALJ should have determined that his headaches equaled Listing 11.02 under Social Security Ruling 19-4p. Such a finding would have rendered him disabled at this step.

Some aspects of the ALJs' step-three consideration of potential mental impairments are relevant to the parties' arguments.  The ALJ considered the four different domains of the "paragraph B criteria" and found that Blackburn has either "mild" or "moderate" in all four mental-functioning domains: (1) *mild* limitation in understanding, remembering, or applying information; (2) *moderate* limitation in interacting with others; (3) *moderate* limitation in concentrating, persisting, and maintaining pace; and (4) *mild* limitation in adapting or managing oneself.  D.E. 9 at 21-22.

In these analyses, the SSA uses a five-point rating scale of increasing limitation consisting of "no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The regulations define these five levels of limitations as follows:

> a.    No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

3

b.  Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

c.  Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d.  Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e.  Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00F.

Thus, the ALJ found Blackburn had moderate (*i.e.*, mid-range or "fair") limitations in two of the four mental-functioning domains. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00, describing "Mental Disorders."

If, as here, a claimant is found non-disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is his maximum ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. The ALJ found:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work, which requires lifting/carrying/pushing/pulling up to 20 pounds occasionally and 10 pounds frequently, sit for six hours (with normal breaks) in an eight-hour workday, and stand and/or walk for six hours (with normal breaks) in an eight-hour workday with the following additional limitations: occasional climbing ramps/stairs but no climbing ladders/ropes/scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; no work at unprotected elevations; can sustain frequent motions of the upper and lower extremities for such as push/pull, operating controls but no overhead reaching; no commercial driving; no exposure to vibration; can tolerate occasional atmospheric exposure to conditions such as dust or smoke; **no production rate pace of an assembly line job; can do simple tasks; occasional social interaction consistent with give/take instructions; and can adapt to changes in the simple workday routine.**

D.E. 9 at 22-23.

4

Blackburn objects to this RFC finding, specifically the portion the Court has rendered in bold. He argues the RFC does not properly account for his mental-functioning limitations and/or headaches, or, in the alternative, he argues the ALJ did not adequately explain the linkage between the mental and headache limitations and the limitations in the RFC. D.E. 10, 18. He also argues the ALJ improperly dismissed his subjective complaints. *Id*.

At the fourth step, if a claimant's impairments do not prevent him from doing past relevant work (given the ALJ's assessment of the claimant's residual functional capacity), he is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Blackburn was unable to perform his past relevant work as a mechanic. D.E. 9 at 29.

At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from doing other work that exists in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Blackburn was not disabled at this step. D.E. 9 at 29-31. The ALJ asked the vocational expert "whether jobs exist in the national economy for an individual with [Mr. Blackburn's] age, education, work experience, and residual functional capacity." *Id*. at 30. The expert provided a list of jobs including laundry sorter, collator, and tag inserter. *Id*. Because sufficient work existed in the national economy that Blackburn could perform, the ALJ found him "not disabled" as defined by the regulations. *Id*. at 31.

Significantly here, the ALJ's hypothetical to the VE tracked the RFC described above. Concerning Blackburn's mental abilities, the ALJ's hypothetical included:

> He should not be put at the production rate pace of an assembly line, L-I-N-E, job. He's capable of simple tasks that are neither complex nor complicated. He's capable of occasional social interaction at a level consistent with giving/taking directions or signaling. He can adapt to changes in the workplace throughout the routine day.

D.E. 9 at 67.

## II. Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Mullen*, 800 F.2d at 545 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th

Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id*. § 416.920c(b)(2).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[3] It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility

---

[3] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

### III. Moderate Limitation in Concentration, Persisting, and Maintaining Pace

As previously noted, concerning the paragraph B mental-health criteria, the ALJ found "mild" limitation in two domains and "moderate" limitation in two domains. These ALJ findings were somewhat in-between the findings of consultive examiner Dr. Edd Easton-Hogg and the findings of the DDS psychological consultants. The psychological consultants (Drs. Clarissa Roan-Belle and Stephen Perry) found "mild" limitations in all four domains. D.E. 9 at 77, 86-87. In contrast, Dr. Easton-Hogg found a "marked" limitation in Blackburn's ability to tolerate the stress and pressure of work, and "moderate" limitation in the other three functional domains. *Id*. at 604. The ALJ found that Blackburn had (1) *mild* limitation in understanding, remembering, or applying information; (2) *moderate* limitation in interacting with others; (3) *moderate* limitation in concentrating, persisting, and maintaining pace; and (4) *mild* limitation in adapting or managing oneself. *Id*. at 21-22. Blackburn first argues the RFC (and by extension the ALJ's questioning of the VE) did not adequately take into account his moderate limitation in concentrating, persisting, and maintaining pace.

Dr. Easton-Hogg's consultive examination report from October 20, 2022, is Exhibit 9F. D.E. 9 at 602. The ALJ's decision paraphrased almost the entirety of Dr. Easton-Hogg's report across three paragraphs. *Id*. at 27-28. The ALJ found Dr. Easton-Hogg's report "partially persuasive." *Id*. at 28. The ALJ explained:

> The exam supports the claimant would have a moderate limitation to sustain concentration and persistence and to respond appropriately to supervisors, coworkers and the public as the exam showed the claimant's attention to task and concentration appeared limited at times and his affect was sad and mood depressed; but the exam showed the claimant would have no more than a mild limitation to tolerate stress and to understand and remember instructions as he was

able to spell the word "world" backwards; was able to repeat a series of threes backwards from the number 20; was able to repeat up to a digit series of numbers forward and up to a digit series of numbers in reverse; and was able to report two of three unrelated words after a ten minute delay (Exhibits 3A/5 and 9F). However, marked loss of functional capacity for a typical, simple daily routine is not proven by the complete longitudinal record, including reports that were not of record at the time of the [consultive examination], so I have not assigned high persuasive impact to the related portion of [Dr. Easton-Hogg's] opinion.

*Id.*

At Exhibit 1A, psychological consultant Clarissa Roan-Belle, Ph.D., having conducted her own review of the record, including Dr. Easton-Hogg's previous findings, opined that Blackburn had only mild impairments across all four mental domains. D.E. 9 at 77. Although Dr. Easton-Hogg found "moderate to marked impairments across domains of functioning," this conclusion was "not persuasive" to Dr. Roan-Belle because the "[t]otality of evidence suggests no more than mild impairments across any domain of functioning." *Id.* She remarked that Dr. Easton-Hogg's report "relies heavily on the [claimant's] subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." She found that Dr. Easton-Hogg's opinion "contrasts with the other evidence in the record" and is "without substantial support from the medical source who made it, which renders it less persuasive." *Id.* (dated November 8, 2022).

At Exhibit 3A, psychological consultant Timothy Gregg, Ph.D., also considered Dr. Easton-Hogg's findings and had the same remarks as Dr. Roan-Belle. D.E. 9 at 86-87 (dated February 3, 2023).

But the ALJ did not fully accept either set of findings. He found the psychological consultants' conclusions "partially persuasive." D.E. 9 at 28. The ALJ explained:

Persuasive rationale supports that the claimant has mild limitation to understand, remember or apply information and to adapt or manage oneself as this is supported by the complete longitudinal record including [Dr. Easton-Hogg's]

9

consultative psychological evaluation at Exhibit 9F, which show the claimant was alert and fully oriented; was able to spell the word "world" backwards; was able to repeat a series of threes backwards from the number 20; was able to repeat up to a digit series of numbers forward and up to a digit series of numbers in reverse; was able to report two of three unrelated words after a ten minute delay; and his capacity for abstraction was intact, and is able to maintain his hygiene and take care of his personal needs. However, the exam showed the claimant would have moderate limitation to interact with others, and to concentrate, persist or maintain pace as the exam showed the claimant's attention to task and concentration appeared limited at times and his affect was sad and mood depressed.

*Id*. at 28-29. The ALJ accordingly found mild limitation in two domains and moderate limitation in two domains. His findings were neither as severe as Dr. Easton-Hogg's findings, nor as benign as the psychological consultants' findings.

The first issue is whether the RFC appropriately accommodates the ALJ's findings of moderate limitation in concentrating, persisting, or maintaining pace. *See* D.E. 9 at 22. Here, Blackburn argues the ALJ "failed to incorporate any limitation into the RFC to restrict the Plaintiff's handling of simple tasks." D.E. 10 at 10.[4] He says his RFC says he "'can do simple tasks' without any limitation," and this contradicts "Dr. Easton-Hogg's persuasive opinion that Plaintiff's ability to carry out simple instructions is impaired to a moderate degree." *Id*.

The "simple tasks" reference is first found in Dr. Easton-Hogg's report. Among his conclusions is that Blackburn's "capacity to understand and remember instructions towards the performance of simple tasks appears affected by symptoms to a moderate degree." D.E. 9 at 604. This mental-function domain appears to correspond to the first domain in the regulations, which is "understanding, remembering or applying information." Although the ALJ considered Dr. Easton-Hogg's report partially persuasive, this is one finding where the ALJ determined the report was unpersuasive—downgrading this domain from moderate limitation to mild limitation. And the ALJ explained his reasoning for agreeing instead with the psychological consultants that

---

[4] Page-number citations to the parties' briefs refer to the blue page numbers generated by ECF.

10

Blackburn had only a mild limitation in "understanding, remembering or applying information." *Id*. at 28-29.

So, to be clear, the ALJ did not agree with Dr. Easton-Hogg that Blackburn was impaired in his ability to carry out "simple tasks." It is thus unsurprising the RFC includes that Blackburn "can do simple tasks." D.E. 9 at 23.

However, more generally, Blackburn argues that an RFC that limits a claimant to "simple tasks" is inadequate to account for one thing the ALJ found here, which is a moderate limitation in "concentrating, persisting, or maintaining pace." D.E. 10 at 10. Under the regulations, to say that Blackburn has "moderate" limitation in a Paragraph B domain means that his mental capabilities in that domain are "fair," which falls in between "slightly limited" and "seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00F2.

The pivotal question then is whether a limitation to "simple tasks" is *per se* inadequate for a claimant who has a "fair" ability to concentrate, persist, or maintain pace. D.E. 10 at 10. The answer is no, and the ALJ did not commit reversible error.

Here, the ALJ's "light work" RFC includes additional restrictions: "no production rate pace of an assembly line job; can do simple tasks; occasional social interaction consistent with give/take instructions; and can adapt to changes in the simple workday routine." D.E. 9 at 22-23. It is reasonable to conclude that limiting Blackburn to slower-paced assembly lines, only simple tasks, and only occasional social interaction "with give/take instructions" was the ALJ's way of addressing Blackburn's moderate mental limitations. On this record, the Court cannot find that the RFC is unsupported by substantial evidence on this issue.

Nor is it necessary for an RFC to include specific restrictions when moderate mental limitations are present. An ALJ "is required to consider the effects of both severe and non-

11

severe impairments in determining the RFC." *Kohne v. Kijakazi*, No. 2:23-CV-37-DCR, 2023 WL 5220853, at \*4 (E.D. Ky. Aug. 14, 2023). However, findings made at earlier steps do not automatically carry over into the RFC. *Richardson v. Saul*, 511 F. Supp. 3d 791, 798 (E.D. Ky. 2021). In drafting the RFC, the ALJ is required to consider a claimant's non-severe mental health limitations but is not required to inevitably incorporate them in the RFC. *Karen Marie M. v. Kijakazi*, No. 2:20-CV-416-DCN-REP, 2021 WL 6010422, at \*6 (D. Idaho Nov. 19, 2021), *recommendation adopted*, 2021 WL 5999132 (D. Idaho Dec. 20, 2021) (citing *Taylor v. Berryhill*, No. 17-CV-11444, 2018 WL 3887521, at \*6 (E.D. Mich. July 5, 2018), *recommendation adopted*, 2018 WL 3870066 (E.D. Mich. Aug. 15, 2018)). "Severe or non-severe, an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work." *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-CV-818, 2017 WL 3587217, at \*6 (S.D. Ohio Aug. 21, 2017), *recommendation adopted*, 2017 WL 4222983 (S.D. Ohio Sept. 21, 2017). Thus, there is no requirement that moderate mental-health limitations be incorporated into the RFC in every case. *Doornbos v. Comm'r of Soc. Sec.*, No. 17-1464, 2017 WL 8948744, at \*6 (6th Cir. Dec. 13, 2017); *Jarrell v. O'Malley*, No. 3:23-CV-00078-EBA, 2024 WL 4357556, at \*5 (E.D. Ky. Sept. 30, 2024) (citing *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at \*3 (6th Cir. Jan. 31, 2020)).

Blackburn relies on a pair of cases whose reasoning supports his position: *Whack v. Astrue*, No. 06-CV-4917, 2008 WL 509210, at \*8 (E.D. Pa. Feb. 26, 2008), and *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005). D.E. 10 at 9. *Whack* emerges from another Circuit, and is thus not controlling. As for *Edwards*, its holding on this point is both questionable as a legal matter and distinguishable from the facts in this case.

Several courts in this Circuit have disagreed with the "notion" from *Edwards* that the ALJ "is required to explicitly reference any level of deficiency in the plaintiff's [difficulties in concentration, persistence, and/or pace] to the vocational expert." *Marini v. Comm'r of Soc. Sec.*, No. 13-CV-10067, 2014 WL 1230034, at \*5 (E.D. Mich. Mar. 25, 2014). A "moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work." *Lewicki v. Comm'r of Soc. Sec.,* 09-CV-11844-BC, 2010 WL 3905375, \*2 (E.D. Mich. Sept. 30, 2010); *see also Infantado v. Astrue*, 263 F. App'x 469, 476 (6th Cir. 2008); *Edmunds v. Comm'r of Soc. Sec.*, No. 09-CV-13076, 2010 WL 3633768, at \*8 (E.D. Mich. Aug. 17, 2010) (finding that substantial evidence supported ALJ's ruling that a claimant with moderate limitation in concentration, persistence, and pace could perform "simple, routine, repetitive" work); *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) (finding that an "unskilled" work limitation in residual function capacity was sufficient to account for an ALJ's determination that the claimant "often" experienced issues with concentration, persistence, and pace).

The Court here draws guidance from a published Sixth Circuit case. The ALJ in *White* found the claimant, like Blackburn, was moderately limited as to attention and concentration. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 280, 287 (6th Cir. 2009). Relying on *Edwards*, White argued the ALJ erred in the RFC by including the criterion of "simple repetitive type work." The argument was that "this limitation was misleading because the possibility exists that a claimant's limited ability to concentrate might make the performance of even repetitive-type work impossible." *Id*. at 287. The Commissioner then argued that *Edwards* was "not good law in light of *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), which rejected the argument that

13

an ALJ who found that a claimant 'often' had problems concentrating was required to include

that finding in the hypothetical question." *Id*. at 288.  The appellate court reasoned:

> the panel need not address whether *Edwards* is consistent with *Halter* because *Edwards* itself is distinguishable from White's case.  The hypothetical claimant posited by the ALJ in *Edwards* gave the VE no indication that the plaintiff had "moderate limitations [on] concentration, persistence and pace."  383 F. Supp. 2d at 930-31.  In contrast, the hypothetical posed to the VE during White's hearing expressly included the condition that the claimant had a "moderate limitation in [the claimant's] ability to maintain attention and concentration due to mental impairment."  White has therefore failed to show that the ALJ's hypothetical was an inaccurate representation of White's functional limitations.

*Id*.

There is a similar dynamic here.  The ALJ's RFC provided to the VE was not devoid of

any accommodation for a moderate limitation in concentration, persistence, or maintaining pace.

The RFC includes both a limitation to "simple tasks" and "no production rate pace of an

assembly line job" and a "simple workday routine."  D.E. 9 at 23.  There are cases wherein a

limitation to, *e.g.*, "simple repetitive tasks" is adequate to account for moderate difficulties in

concentration, persistence, and pace.  *See, e.g.*, *Mallott v. Colvin*, No. 5:13-CV-305-DCR, 2014

WL 2574520, at *8 (E.D. Ky. June 9, 2014) (citing *Hunt v. Comm'r of Soc. Sec.*, No. 1:13-CV-

145, 2014 WL 345660, at *6 (W.D. Mich. Jan. 30, 2014); *Oliver v. Colvin*, No. 2:12-CV-480,

2014 WL 710101, at *5 (E.D. Tenn. Feb. 21, 2014); *Shaffer v. Colvin*, No. 2:12-CV-432, 2014

WL 1207534, at *7 (E.D. Tenn. Mar.24, 2014).

The ALJ here did not ignore Blackburn's moderate limitations.  Instead, the ALJ took

those limitations specifically into account when crafting the RFC.  *See Miller v. O'Malley*, No.

5:23-CV-209-HAI, 2024 WL 315685, at *6 (E.D. Ky. Jan. 26, 2024).  The RFC accordingly is

not unsupported by substantial evidence on this ground.  This is not a case where the Court

"simply cannot discern [why the RFC omits mental limitations] because the ALJ did not in any

14

way address the matter." *Richardson*, 511 F. Supp. 3d at 799. Nor is this a case where the ALJ made "no mention of the claimant's mental impairment in the RFC analysis." *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017), *recommendation adopted*, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017). Although the ALJ here could have done things differently, his RFC is not outside the zone of appropriate choices under the substantial-evidence standard.

The Kentucky case of *Bruce* is also on-point. As here, Bruce relied on *Edwards* in arguing the RFC provided to the VE failed to adequately capture his "moderate limitation in concentration, persistence, or pace." *Bruce v. Berryhill*, No. 2:17-CV-15-HRW, 2018 WL 988444, at *3 (E.D. Ky. Feb. 20, 2018), *aff'd*, 772 F. App'x 307 (6th Cir. 2019). The *Bruce* court first noted that this Circuit takes a case-by-case approach; *Edwards* can be distinguished and did not establish a blanket rule. *Id*. The critical fact in *Bruce* was that "the jobs the ALJ relied on at step five were unskilled jobs," and unskilled jobs "by definition involve only understanding, remembering, and carrying out simple tasks and would account for a moderate limitation in concentration/persistence/pace. SSR 96-9p, 1996 WL 374185, at *9."[5] *Id*.

The same is true here. The jobs recommended by the VE at step five are all unskilled. D.E. 9 at 30. They accordingly already incorporate concessions for a moderate limitation in concentration/persistence/pace.

---

[5] Ruling 96-9p states, in part:

**Mental limitations or restrictions:** A substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), will substantially erode the unskilled sedentary occupational base and would justify a finding of disability. These mental activities are generally required by competitive, remunerative, unskilled work:

- Understanding, remembering, and carrying out simple instructions.
- Making judgments that are commensurate with the functions of unskilled work--i.e., simple work-related decisions.
- Responding appropriately to supervision, co- workers and usual work situations.
- Dealing with changes in a routine work setting.

The ALJ's findings challenged herein are not the product of reversible legal error and are not unsupported by substantial evidence.

### IV.  Moderate Limitation in Interacting with Others

The ALJ agreed with Dr. Easton-Hogg that Blackburn was moderately limited in interacting with others and rejected the consultive experts' opinion that this limitation was only mild in character.  D.E. 9 at 27-28.  The RFC includes that Blackburn can do "occasional social interaction consistent with give/take instructions."  *Id*. at 23.  The ALJ's hypothetical question to the VE included:  "He's capable of occasional social interaction at a level consistent with giving/taking directions or signaling."  D.E. 9 at 67.  Blackburn now argues this limitation is inadequate to account for his moderate disability.  D.E. 10 at 11.

The analysis in Part III above is largely applicable here.  There is no requirement that moderate mental-health limitations be incorporated into the RFC.  *Tackett v. Bisignano*, No. 6:25-CV-40-HAI, 2025 WL 2984313, at *7 (E.D. Ky. Oct. 22, 2025); *Doornbos v. Comm'r of Soc. Sec.*, No. 17-1464, 2017 WL 8948744, at *6 (6th Cir. Dec. 13, 2017); *Jarrell v. O'Malley*, No. 3:23-CV-00078-EBA, 2024 WL 4357556, at *5 (E.D. Ky. Sept. 30, 2024) (citing *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *3 (6th Cir. Jan. 31, 2020)).

Nevertheless, the ALJ here did include a limitation related to interacting with others.  The ALJ also addressed this domain while discussing Dr. Easton-Hogg's findings.  He said, "The exam supports the claimant would have a moderate limitation to sustain concentration and persistence and to respond appropriately to supervisors, coworkers and the public as the exam showed the claimant's attention to task and concentration appeared limited at times and his affect was sad and mood depressed[.]"  D.E. 9 at 28.  There is sufficient information here for the Court to review the ALJ's decision.  The ALJ found that, due to Blackburn's sad and depressed mood,

16

he had a moderate limitation in interacting with others, which could be addressed by limiting him to only "occasional social interaction consistent with give/take instructions." *Id*. at 23. The ALJ also noted that Blackburn "has been able to live with others [and] socialize with friends and family." *Id*. at 29. This is sufficient justification under substantial-evidence review and evidences no legal error.

### V.  Headache Limitations

Among the "severe impairments" identified by the ALJ were Blackburn's "migraine and other headaches." D.E. 9 at 20. In determining that this impairment did not meet or equal a listing, the ALJ explained:

> There is no specific medical listing regarding migraines/headaches, and the undersigned evaluated the impairment pursuant to the guidelines set forth in Social Security Ruling 19-4P. There is no evidence that the effects of migraines/headaches, either alone or in combination with another impairment(s), meet or medically equal the criteria of a listing in an affected body system.

*Id*. at 21.

Blackburn raises two arguments:  that the RFC should have included headache-related limitations, and that the ALJ should have found the headaches equaled a listing under Rule 19-4p. D.E. 10 at 11-16. The Court first turns to the Rule 19-4p question.

Headaches are not an Appendix 1 listed impairment that directs a finding of disability at step three. But the Administration has issued SSR 19-4p, which instructs ALJs to compare primary headache disorders with paragraphs B and D of listing 11.02, which concerns epilepsy. *Soc. Sec. Ruling, Ssr 19-4p; Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders*, SSR 19-4P, 2019 WL 4169635 (S.S.A. Aug. 26, 2019). Paragraphs B and D at issue here. D.E. 10 at 16. Answer 8 in SSR 19-4p explains:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to

prescribed treatment.  To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS [Acceptable Medical Source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.  To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in:  Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

Although Blackburn suggests Paragraph D is implicated here (D.E. 10 at 16), the ALJ did not find a "marked limitation" in any area of functioning.  And Blackburn does not argue for the finding of a marked limitation.  The Court thus focuses on Paragraph B.

To find equivalence under Listing 11.02B, Ruling 19-4p requires a detailed description of a claimant's typical migraine headache (including a description of limitations in functioning) from an acceptable medical source and that the disabling headache events occur at least once a week for at least three consecutive months.  *Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *4 (6th Cir. May 26, 2023).  If these factors exist, then the ALJ must *consider* whether the migraines debilitate the claimant similarly to *disabling dyscognitive* seizures.  *See Jandt v. Saul*, No. 1:20-CV-45-HBB, 2021 WL 467200, *8 (W.D. Ky. Feb. 9, 2021) (gathering cases).  The mere existence of migraine headaches is insufficient to meet this standard.  *Broderick v. Kijakazi*, No. 2:21-CV-12480, 2022 WL 19518407, *13 (E.D. Mich. July 12, 2022).

18

To provide an example, having severe migraines accompanied by dizziness and fainting spells requires an ALJ to address whether those headaches are the medical equivalent of dyscognitive seizures. *Willis v. Comm'r of Soc. Sec. Admin.*, No. 2:19-CV-11689, 2020 WL 1934932, *3 (E.D. Mich. Apr. 22, 2020). Similarly, when a claimant has migraines that are so severe that they keep the claimant from driving, from standing for long periods of time, and from focusing the claimant's eyes, then the headaches may be the medical equivalent of Listing 11.02B dyscognitive seizures. *Fillinger v. Comm'r of Soc. Sec.*, No. 5:20-CV-01653, 2022 WL 952192, *4 (N.D. Ohio Mar. 30, 2022).

Stated differently, when a claimant satisfies the above factors, he raises a *substantial question* as to whether the migraines are equivalent to Listing 11.02, and the ALJ must thus *consider* equivalence. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). To establish a substantial question regarding whether the claimant meets a step three listing or its equivalent, "the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of [the listing]." *Id.*

The ALJ here did consider equivalence under Ruling 19-4p and Listing 11.02 and found "no evidence" suggesting equivalence. D.E. 9 at 21. When finding that an impairment is not medically equivalent, an ALJ is *not* required to "articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." SSR 17-2p, 2017 WL 3928306, at *4; *see also Bessette v. Bisignano*, No. 3:25-CV-39-EBA, 2026 WL 369905, at *4 (E.D. Ky. Feb. 10, 2026). And no medical consultant found that Blackburn met a listing equivalent.

The question now is: Has Blackburn pointed to specific evidence in the form of a detailed description from an acceptable medical source of his typical migraine headache

19

(including a description of limitations in functioning) that is so supportive of equivalence that the ALJ's decision under these lenient standards of review was unsupported by substantial evidence? The answer is no.

Blackburn bears the evidentiary burden, and here is the evidence he musters in his brief. Blackburn testified that he has headaches five to six times a week, which is consistent with what he told medical providers. D.E. 10 at 15 (citing D.E. 9 at 21, 24, 26, 55, 562, 556). He points to a record in which he told providers he was having a headache, despite his medicine, which was helping somewhat. *Id*. at 16 (citing D.E. 9 at 389). He points to a record showing that a nerve block only temporarily eased his pain. *Id.* (citing D.E. 9 at 379).

Blackburn also points to records that include descriptions of his headache symptoms. D.E. 10 at 16. In the Fall and Winter of 2022, Blackburn reported his migraines were "severely [a]ffecting his everyday life as he is not able to enjoy anything. He usually lays in a dark room waiting for the migraine to go away." D.E. 9 at 556, 610, 616, 622, 790. He also reported he "he gets nauseated with his migraines and has sensitivity to light and sound." *Id.* at 562, 568.

In March 2023, Blackburn described his migraines as follows: "Pain located occipital area, left greater than right. Pain described as throbbing with accompanying nausea, vomiting, photophobia but no phonophobia. Currently occurring daily, lasting 2+ hours. Worsening with time." D.E. 9 at 963.

Although the Court is sympathetic to Blackburn's pain, the record contains no indication of migraine symptoms equivalent to *dyscognitive* seizures. Although he describes nausea, throbbing pain, and light sensitivity, the symptoms described are not the medical equivalent of Listing 11.02B dyscognitive seizures. On this record, Blackburn does not meet his burden of showing the ALJ's decision on Ruling 19-4p was unsupported by substantial evidence.

20

Further, the record contains no medical source who opines that Blackburn has a disability that equals a listed impairment. This fact alone is enough to warrant affirmance of the ALJ's decision here. Under the regulations, a claimant's impairment cannot be found to medically equal a listing unless the evidentiary record contains one of the following:

1.    A prior administrative medical finding from a state agency medical consultant or psychological consultant from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or

2.    Medical expert evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or

3.    A report from the Appeals Council's medical support staff supporting the medical equivalence finding.

SSR 17-2p, 82 Fed. Reg. 15263, 15265 (March 27, 2017). Thus, an ALJ may only find medical equivalence at the hearing level if the record contains supportive medical opinion findings from either a state agency consultant or a medical expert. *Id.* Conversely, if the ALJ "believes the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," SSR 17-2p provides that the ALJ need not obtain medical expert evidence, and in fact need not even "articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment." *Id.*

*Weese v. Comm'r of Soc. Sec.*, No. 1:22-CV-2215, 2024 WL 4213314, at *23 (N.D. Ohio Sept. 17, 2024). Such is the case here. *See also Lybarger v. Comm'r of Soc. Sec.*, No. 3:24-CV-1013, 2024 WL 5134290, at *14 (N.D. Ohio Dec. 17, 2024), *recommendation adopted*, 2025 WL 959463 (N.D. Ohio Mar. 31, 2025). There is no prior administrative finding or expert evidence suggesting listing equivalence. The ALJ thus had no evidentiary basis for finding Ruling 19-4p headache-seizure equivalence.

But now what about headache-related limitations in the RFC? Blackburn says the ALJ erred by not including any. D.E. 10 at 11-13. He says the ALJ opinion is inconsistent in that headaches are a severe impairment, but "the RFC contains no corresponding limitations." *Id*. at

12. Pointing to the reported symptoms (just discussed herein), Blackburn argues that his migraines would "would limit him from performing at a consistent pace to keep time off-task less than 15% and absences no more than two per month, which are requirements testified to by the VE." *Id*. at 13.

One problem is that Blackburn did not make these arguments prior to this appeal. Blackburn did not even mention headaches/migraines among his alleged impairments in his initial application. D.E. 9 at 233. Among the "physical or mental conditions" that limited his ability to work, Blackburn listed neck fusions, back fusions, left shoulder pain, diabetes, high blood pressure, and anxiety. *Id*. And his counsel did not mention headaches/migraines during the opening statement the hearing. *See id*. at 41-42. If the migraine headaches were so debilitating, one would expect Blackburn to have mentioned them in his application for benefits.

Blackburn testified repeatedly about debilitating headaches, but the ALJ found the record softened the credibility of these headache claims. D.E. 9 at 29.

Most critically, nowhere in the medical record is there a source that recommends specific headache-related work limitations. The claimant bears the burden of showing how his headaches, combined with other impairments, limited his ability beyond the ALJ's RFC. *Spence v. Comm'r of Soc. Sec.*, 2020 WL 1818041, at *3 (E.D. Mich. Jan. 23, 2020). Blackburn does not sustain this burden because he cites no medical evidence connecting his headaches to specific functional limitations. *Simpkins v. Comm'r of Soc. Sec.*, No. 20-CV-10673, 2021 WL 4198404, at *3 (E.D. Mich. Apr. 8, 2021), *recommendation adopted*, 2021 WL 3771874 (E.D. Mich. Aug. 25, 2021).

## VII.  Credibility

Blackburn also argues the ALJ failed to provide a "logical bridge" as to why his subjective complaints were discounted.  D.E. 10 at 17.  To the contrary, the ALJ provided an adequate rationale:

> In sum, although the claimant does have functional limitations because of his impairments, they are not to the degree as alleged and are fully accommodated by the within residual functional capacity.  A review of the medical evidence of record reveals that despite his impairments, the claimant has been able to live with others, socialize with friends and family, watch television, conduct some daily chores, and perform self-care.  Moreover, the objective medical evidence herein indicates that the claimant's impairments have been stable, and his physical examinations and mental status examinations have been essentially normal.  Further, the claimant has received relief of his pain with medications and treatment. Looking at the claimant's allegations in conjunction with the medical evidence available, the claimant is found to have RFC at the light level of exertion with the additional limitations set forth.

D.E. 9 at 29.

The Court must give these credibility findings great deference.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  The record here is not so lopsided in Blackburn's favor that substantial evidence is lacking as to credibility.  The ALJ's adverse credibility finding was not outside the zone of reasonable choice.

## VIII.  CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED THAT** the ALJ's decision is **AFFIRMED**.  Plaintiff's request to remand (D.E. 10) is **DENIED**.  Judgment will be entered in favor of the Commissioner by separate contemporaneous order.

This the 15th day of April, 2026.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge

23